UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILLIP W. BAXTER and NOLA BAXTER,

Plaintiffs,

v.

NATIONAL SAFETY COUNCIL, EVANGELOS GALOUNIS, and JANE DOE GALOUNIS,

Defendants.

CASE NO. C05-0752C

ORDER

I. INTRODUCTION

This matter is before the Court on a motion for summary judgment (Dkt. No. 17) by Defendants National Safety Council ("NSC") and Evangelos Galounis, as well as Plaintiff's[1] third request (Dkt. No. 34) for an extension of time to respond to Defendants' motion. Having considered the pleadings, memoranda, declarations, and exhibits on record, and finding that oral argument is unnecessary, the Court will DENY Plaintiff's motion, GRANT Defendants' motion, and DISMISS this case with prejudice, as follows.

---

[1] Although the Baxters and their marital community are all named plaintiffs, the Court will refer to "Plaintiff" in the singular herein, as Nola Baxter's claims are exclusively derived from her husband's employment with Defendant National Safety Council.

ORDER – 1

II.   PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND

In the order granting Plaintiff's first request for an extension of time to respond to Defendants's motion for summary judgment, the Court stated that "[n]o further extensions of time will be considered absent a compelling showing of good cause." (Dkt. No. 33.) The Court further stated that "the discovery cutoff and dispositive motions deadline have both expired in this case. Those deadlines will not be extended, nor the trial date continued, except by a showing of good cause by Plaintiff." (*Id.*) The Court also granted Plaintiff's second request for an extension, but emphasized that it would "not consider *any* additional requests by Plaintiffs to extend *any* deadline in this case absent the most compelling possible showing of good cause." (Dkt. No. 39.)

Plaintiff's latest request fails to demonstrate good cause for yet another continuance, and has finally exhausted the Court's patience. The request fails to explain how counsel's intermittent gastrointestinal problems and mysterious computer malfunctions prevented him from (1) conducting discovery before the June 5 deadline; (2) filing dispositive before the July 3 deadline; (3) participating in mediation before the August 11 deadline; and finally, (4) filing an opposition to Defendants' summary judgment motion before any of the previous four deadlines. Given counsel's growing record of procrastination, the Court has no confidence that granting a further extension would result in anything but another plea for additional time.

Plaintiff has had more than ample time and opportunity to conduct any necessary discovery; to say that counsel has not exhibited diligence justifying another extension of time is the height of understatement. *See Burlington Northern Santa Fe Ry. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) ("Rule 56(f)-based continuance of a motion for summary judgment for purposes of discovery" may be denied when "the non-moving party has not diligently pursued discovery of the evidence." (internal quotes omitted)). Nor has Plaintiff demonstrated good cause to extend the discovery or dispositive-motions deadline with less than six weeks remaining before the trial date. *See* Local Rule CR 16(n)(1) ("In order to accomplish effective pretrial procedures

ORDER – 2

and to avoid wasting time of the parties, counsel, and the court, [pretrial deadlines] will be strictly enforced."). Plaintiffs' request for a further extension of time to respond to Defendants' motion for summary judgment is DENIED.

III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on each of Plaintiff's six causes of action under Washington law: (1) breach of contract; (2) violations of wage statutes; (3) fraudulent concealment and intentional misrepresentation; (4) negligent misrepresentation; (5) wrongful discharge in violation of public policy; and (6) violations of the Washington Consumer Protection Act. The Court will address each of these claims in turn.

*A.  Applicable Standards*

The Court will enter summary judgment if "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 248–50; *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

Plaintiff has failed to submit a timely opposition to Defendants' motion for summary judgment. Rule 56(e) provides that a district court may grant a motion for summary judgment based on an adverse party's failure to respond. Local Rule CR 7(b)(2) further provides that if "a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." However, the Court may not grant summary judgment "simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

ORDER – 3

B. *Claims Arising from NSC's Failure to Pay Commissions and Incentives*

    1. *Quarterly Incentive Payments*

Plaintiff's first breach-of-contract claim arises from the employment contract he entered with NSC on May 7, 2002, in particular the provision stating that a quarterly incentives of $2,500 "will be paid based on [Plaintiff's] achievement of goals and objectives as set by NSC prior to each quarter." (Decl. of Deborah Waldeck Ex. 3 at 2.) It is undisputed that Galounis, as Plaintiff's supervisor, set the incentive goals for the first quarter of fiscal 2003 (June–August 2002), and that Plaintiff failed to meet certain of those goals. (Decl. of Evangelos Galounis ¶ 3.) NSC concedes that it did not set any second- or third-quarter incentive goals for Plaintiff. (Mot. 8.) It argues, therefore, that Plaintiff did not qualify for any incentive payments for those quarters.

Viewing the contractual language in the light most favorable to Plaintiff, as the Court must on summary judgment, the quarterly-incentive provision may have incorporated an implied promise that NSC would actually set Plaintiff's goals before each quarter. However, a necessary element of any breach-of-contract claim is proof of damages that does not rest solely on speculation and conjecture. *Wilkerson v. Wegner*, 793 P.2d 983, 986 (Wash. Ct. App. 1990). Assuming NSC did breach the employment agreement by failing to set Plaintiff's quarterly goals, there is no evidence in the record supporting a non-speculative damages calculation. That is, a jury would have no means of defining the quarterly goals that NSC should have established nor whether Plaintiff's performance in those quarters would have met those goals. Because there is no evidence supporting an element of Plaintiff's *prima facie* contract claim, the Court will GRANT summary judgment on this claim.

Plaintiff also claims that NSC's failure to pay him any quarterly incentive payments violated Washington Revised Code sections 49.48.010 and 49.52.070. Plaintiff's sole basis for these claims is the premise that NSC was obligated to pay Plaintiff a reasonably calculable incentive payment. Because the Court has rejected that premise, summary judgment on these statutory claims must also be GRANTED.

ORDER – 4

### 2. *Annual Sales Commission*

Plaintiff's employment contract also provided that Plaintiff would earn an annual commission equal to five-percent of the dollar amount by which "cumulative 2003 fiscal-year actual sales exceed cumulative annual 2003 fiscal-year sales projections." (Waldeck Decl. Ex. 3 at 2.)  The undisputed evidence shows that NSC's sales in Plaintiff's assigned region actually decreased from fiscal 2002 to fiscal 2003 by more than $100,000, and there is no evidence in the record suggesting that these lower sales figures exceeded NSC's "cumulative annual 2003 fiscal-year sales projections." (*Id.*)  Because a reasonable jury could not conclude from this evidence that Plaintiff would have been entitled to the annual sales commission, there is no basis to find that NSC breached this provision of the employment agreement.  Accordingly, summary judgment is appropriate and Defendants' motion will also be GRANTED on this aspect of Plaintiff's breach-of-contract and statutory claims.

### C. *Misrepresentation Claims*

Plaintiff's next set of claims arises from statements allegedly made by Galounis or others at NSC to the effect that NSC's chapter directors were properly classified as independent contractors.  Plaintiff alleges that he relied on these statements in accepting NSC's offer of employment.

### 1. *Intentional Misrepresentation*

Under Washington law, a plaintiff alleging intentional misrepresentation carries a heavy evidentiary burden: "Each element of fraud must be established by clear, cogent and convincing evidence," including specific showings that the defendant knew his statement was false and intended that the plaintiff would rely on the false statement. *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996).  Plaintiff has alleged that Galounis or other NSC representatives intentionally misrepresented "the status of other chapter directors' employment at the time of contract formation . . . up until NSC formally confirmed the impropriety of [the directors'] contractual status." (Compl. ¶ 21.)  But there is no evidence whatsoever to show that Defendants knew their statements were false and intended to induce Plaintiff's reliance.  Accordingly, the Court will GRANT summary judgment on this claim.

ORDER – 5

        *2.*     *Negligent Misrepresentation*

Similarly, Plaintiff's negligent misrepresentation claim requires specific facts showing that Defendants knew or should have known that their alleged statements to Plaintiff regarding the employment status and compensation of its chapter directors were false. (Compl. ¶¶ 25–27); *see also Havens v. C&D Plastics, Inc.*, 876 P.2d 435, 448 (Wash. 1994) (negligent-misrepresentation claim requires proof that employer "'supplies false information for the guidance of others in their business transactions [and] fails to exercise reasonable care in obtaining or communicating the information'" (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977)). There is no evidence in the record to support such findings. The Court will GRANT summary judgment on this claim as well.

    *D.*     *Wrongful Termination in Violation of Public Policy*

Plaintiff's wrongful-termination claim comprises: (1) the existence of a clear mandate of public policy; (2) a showing that sanctioning the employer's conduct would jeopardize that policy; (3) a showing that the employee was discharged because of conduct linked to the public policy; and (4) the absence of an overriding justification for the discharge. *Sedlacek v. Hillis*, 36 P.3d 1014, 1018 (Wash. 2001). It is undisputed that Plaintiff was hired as an independent contractor in May 2002, but informed NSC in September that "a friend had told him that he should more properly be considered an employee." (Waldeck Decl. ¶ 6.) In response, NSC hired an independent auditor who concluded "that the relationship between NSC and [Plaintiff] (and others) should be considered employer and employee." (*Id.*) It is also undisputed that Plaintiff was one of two former independent contractors terminated by NSC in late January 2003. (*Id.* ¶ 7 & Ex. 4.) Two others were converted to employees. (*Id.*)

However, even indulging all reasonable inferences in Plaintiff's favor, the evidence does not support a finding that Plaintiff was terminated because he questioned his employment status. NSC promptly hired an independent auditor to investigate Plaintiff's claims, and the auditor informed NSC that Plaintiff and others should indeed be considered employees. This evidence suggests not only that Plaintiff's termination was based on cost considerations flowing from the auditor's report rather than his

ORDER – 6

initial inquiry, but also that NSC had an overriding justification for terminating him based on declining sales in Plaintiff's region. The Court will therefore GRANT Defendants' motion for summary judgment on Plaintiff's wrongful-termination claim.

### E. Washington's Consumer Protection Act

Finally, Plaintiff's claim under Washington's Consumer Protection Act requires evidence establishing, among other elements, an unfair or deceptive act or practice that occurs in trade or commerce. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532 (Wash. 1986). As set forth above, there is no evidence demonstrating any deceptive or unfair acts by Defendants. *Cf. id.* at 535 (plaintiff must show that defendants acts "had the capacity to deceive a substantial portion of the public"). Even were Plaintiff to make such a showing, the employer-employee relationship is not considered to fall within the definition of "trade or commerce." *See* WASH. REV. CODE § 49.60.030(3) (CPA does not cover "any unfair practice committed by an employer against an employee or prospective employee"). Accordingly, the Court will GRANT Defendants' motion as to Plaintiff's consumer-protection claim.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby DENIES Plaintiffs' request for a third extension of time to respond to Defendants' motion for summary judgment. The Court further GRANTS Defendants' motion for summary judgment and ORDERS that this case be DISMISSED with prejudice.[2]

SO ORDERED this 25th day of August, 2006.

/s/ John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] Given the Court's decision to dismiss each of Plaintiff's claims with prejudice, the Court need not address Defendant Galounis's arguments against the imposition of personal liability.

ORDER – 7